IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

TODD BARDIN CHRISTOPHER,       *

     Plaintiff,              *

vs.                        *
                                CASE NO. 4:25-CV-424 (CDL)
ZACHARY ALLEN SISK, *et al.*,    *

     Defendants.           *

## O R D E R

Todd Bardin Christopher alleges that he suffered a medical emergency at his home on December 20, 2023 and that he called 911 to request medical assistance. Deputies from the Harris County Sheriff's office responded but failed to assist him. Instead, they tased him, injured him, harmed his service dog, and arrested him. After the deputies transported Christopher to the jail, the jail staff failed to provide medical care for his injuries. Christopher brought this *pro se* action under 42 U.S.C. § 1983 against the Harris County Sheriff's office, Deputy Zachary Allen Sisk, Sergeant Ryan Campbell, and Deputy Caden Senette. He later filed an amended complaint to add more defendants, including Sheriff Mike Jolley, additional officers, and medical personnel. Presently pending before the Court are motions to dismiss filed by two sets of Defendants: the motions filed by the five Medical Defendants and the motion filed by the Sheriff and three of his deputies. For the reasons set forth below, the Court grants the

Medical Defendants' motions (ECF Nos. 19 & 27) and grants in part and denies in part the Sheriff Defendants' motion (ECF No. 27).

## I.   The Medical Defendants' Motions to Dismiss (ECF Nos. 19 & 27)

Christopher alleges that the three medical providers (Tonia Johnstone, Michael McMunn, and Southern Health Partners, Inc.) and two jail officers responsible for reviewing inmate medical requests (Christie Webb and James Cook) were deliberately indifferent to his serious medical needs.  He asserts claims against these five Medical Defendants under 42 U.S.C. § 1983.  The Medical Defendants argue that these claims are time-barred.  The Court agrees.

The statute of limitations for a § 1983 claim in Georgia is two years.  *Smith v. Mitchell*, 856 F. App'x 248, 249 (11th Cir. 2021) (per curiam).  The "statute begins to run from the date the facts supporting a cause of action are apparent or should be apparent to the plaintiff."  *Id.*  Here, Christopher's claims arise out of events that occurred between December 20, 2023 and December 31, 2023.  *See* Am. Compl. 1-2, ECF No. 6 (alleging that Christopher was arrested on December 20, 2023 and was denied medical treatment for ten days).  Accordingly, Christopher's claims based upon the denial of medical treatment accrued by December 31, 2023.  Although he filed his original complaint within the limitations period on December 4, 2025, Christopher did not name Johnstone, McMunn, Southern Health Partners, Webb, or Cook as Defendants.  Instead,

he stated that he wished to bring claims against unknown "John Doe Jail Officers" and unknown "John Doe Medical Staff."  Compl. at 6, ECF No. 1.  On March 3, 2026, after the limitations period ran and one day before his deadline for serving the original Defendants under Federal Rule of Civil Procedure 4(m), Christopher filed an amended complaint that named Johnstone, McMunn, Southern Health Partners, Webb, and Cook as Defendants.

Federal Rule of Civil Procedure 15(c)(1) states that an "amendment to a pleading relates back to the date of the original pleading" if (1) the amendment asserts a claim that arose out of the events set out in the original pleading *and* (2) the amendment changes "the naming of the party against whom a claim is asserted" if, within the Rule 4(m) service period, the party to be brought in by amendment "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).  Here, there is no indication that *any* Defendant received notice of this action within the Rule 4(m) service period because Christopher did not serve any Defendant by that deadline.  Instead, he filed a motion for service by the U.S. Marshal on March 3, 2026—the day before the Rule 4(m) deadline. Although that motion was later granted and waivers of service were eventually sent to the Defendants, Christopher did not establish

3

that the five Medical Defendants received notice of this action before the Rule 4(m) deadline or had notice that the claims would have been asserted against them but for a mistake concerning their identity.  Moreover, Christopher's amendment to replace the "John Doe" jail and medical staff members does not cure a "mistake" about the identity of a proper party.  Instead, his amendment seeks "to correct the plaintiff's lack of knowledge about whom to sue," which does not satisfy the Rule 15(c) requirements for relation back. *Bloodworth v. United States*, 623 F. App'x 976, 979 (11th Cir. 2015) (per curiam).  For all these reasons, the Court grants the motions to dismiss the claims against Tonia Johnstone, Michael McMunn, Southern Health Partners, Inc., Christie Webb, and James Cook (ECF Nos. 19 & 27).

## II.  The Sheriff Defendants' Motion to Dismiss (ECF No. 27)

Christopher alleges that three Harris County deputy sheriffs violated his constitutional rights when they arrested him on December 20, 2023.  He further alleges that Harris County jail staff disregarded his medical needs.  The Sheriff Defendants—Sheriff Mike Jolley, Zachary Allen Sisk, Ryan Campbell, and Caden Senette—argue that Christopher's complaint fails to state a claim against them.

### A.    Motion to Dismiss Standard

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

B.   Factual Allegations

Christopher alleges the following facts in support of his claims. The Court must accept these allegations as true for purposes of the pending motion.[1]

---

[1] Christopher's original *pro se* complaint alleges detailed facts in support of his claims. *See* Compl., ECF No. 1. He later filed an "Amended Complaint," which added claims against new Defendants but did not repeat the original complaint's detailed factual allegations. *See* Am. Compl., ECF No. 6. The Court recognizes that an amended complaint normally supersedes the original complaint and that Christopher's "Amended Complaint" does not contain a detailed factual basis for his claims. Thus, in ruling on the present motion, the Court could either grant Christopher leave to file a second amended complaint setting forth the factual basis for his claims (which would likely duplicate the original complaint's factual allegations), or the Court could simply consider the original complaint's factual allegations, treating the "Amended Complaint" as a supplement. The Court elects the latter, more efficient option.

Christopher suffered a medical emergency at his home on December 20, 2023. He believed he was having a stroke and called 911 to request medical assistance. Harris County deputies responded to Christopher's home. The deputies accused Christopher of being intoxicated, and they canceled his request for emergency medical services. Christpher, who is legally blind and was unarmed, told the deputies to leave his property, and he went back inside his house. The deputies lured Christopher out of his home, where "Sisk, Campbell, and Senette tased [Christopher] without warning," knocking him unconscious and causing him to fall. Compl. at 7. As a result of the fall, Christopher suffered a broken wrist, a chipped tooth, a bruised shoulder, and a head injury. Christpher's service dog attempted to help him, and the deputies falsely accused Christopher of giving attack commands despite the dog's non-aggressive behavior. The deputies transported Christopher to the jail, where he was held without medical treatment or medication. During his incarceration at the jail, Christopher was able to submit medical requests and grievances, and he alleges that Webb and Cook knew he needed medical treatment but failed to help him get it.

C.    Discussion

Christopher asserts official capacity § 1983 claims against Jolley based on his policies and supervision of the arresting deputies and the jail's medical staff. He also asserts individual

6

capacity § 1983 claims against Sisk, Campbell, and Senette based on their conduct during his arrest.  The Sheriff Defendants assert that all claims against them should be dismissed.  The Court addresses each claim in turn.

### 1.    Official Capacity Claims Against Jolley

Christopher's official capacity § 1983 claims against Jolley are claims against the office of the sheriff.[2]  The claims appear to be based on Jolley's policies, training, and supervision of his deputies and officers on the use of force during an arrest and the provision of medical care to jail detainees.  Jolley contends that the Eleventh Amendment bars these claims.

Under the Eleventh Amendment to the U.S. Constitution, "[a] state is immune from a suit for damages in federal court by one of its own citizens."  *Lake v. Skelton*, 840 F.3d 1334, 1337 (11th Cir. 2016) (citing *Hans v. Louisiana*, 134 U.S. 1, 14–17 (1890)). Eleventh Amendment immunity extends to protect an official who acts "as an 'arm of the State.'"  *Id.* (quoting *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc)).  In Georgia, a county sheriff acts as an arm of the State when establishing and enforcing use-of-force policies.  *Manders*, 338 F.3d at 1328 (finding that a Georgia sheriff acted as an arm of the State in establishing a use-of-force policy at the jail); *Id.* at 1319 (noting that "use of

---

[2] Christopher does not assert any individual capacity § 1983 claims against Jolley.

force and creating force policy are quintessential policing functions, exercised by sheriffs in initial arrests" and "in quelling disruptive inmates in county jails"). A Georgia sheriff also acts as an arm of the State when providing medical care to inmates at a county jail. *See Lake*, 840 F.3d at 1344 (finding that a Georgia sheriff acts as an arm of the State in providing meals to jail inmates); *see also Palmer v. Correct Care Sols., LLC*, 291 F. Supp. 3d 1357 (M.D. Ga. 2017) (explaining why *Lake*'s analysis of the sheriff's provision of food in jails extends to the sheriff's provision of medical care in jails). Under this precedent, Jolley acted as an arm of the State in performing the functions that give rise to Christopher's claims. Accordingly, Christopher's § 1983 claims against Jolley are barred by Eleventh Amendment immunity and are dismissed.

> 2. *Individual Capacity Claims Against Sisk, Campbell, and Senette*

Christopher asserts § 1983 claims against Sisk, Campbell, and Senette in their individual capacities. He alleges that the three deputies used excessive force against him during his arrest, in violation of the Fourth Amendment. The three deputies contend that they are entitled to qualified immunity, which "protects officers engaged in discretionary functions from civil liability only if the officers' actions do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Perez v. Suszczynski*, 809 F.3d 1213, 1218

8

(11th Cir. 2016) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).   There is no dispute that Sisk, Campbell, and Senette were engaged in discretionary functions when they responded to Christopher's home and arrested him.  The next question is whether Christopher alleged facts from which a reasonable conclusion could be reached that that the three deputies violated a clearly established right.

The Fourth Amendment provides a "right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV.  This right against unreasonable seizures "protects an individual from excessive force during an arrest or detention." *Helm v. Rainbow City*, 989 F.3d 1265, 1273 (11th Cir. 2021).   "An arresting officer's use of force is excessive if a reasonable officer would believe it is unnecessary in relation to the situation at hand." *Id.*

Here, the three deputies do not dispute that a Fourth Amendment seizure occurred when Christopher was arrested.  They argue, though, that Christopher did not allege any facts to suggest that Sisk, Campbell, and Senette were present at the time of Christopher's arrest or used force on him.  But he did.  Viewing the factual allegations in the light most favorable to Christopher, as the Court must do at this stage in the litigation, Christpher alleges that he called 911 for medical help, that deputies responded to his property and canceled his EMS request, and that

9

he told the deputies to leave and went back inside his house. Christopher further alleges that the deputies lured him outside and that "Sisk, Campbell, and Senette tased [him] without warning while [he] was unarmed, legally blind, and requesting medical help."  Compl. at 7.  Under these facts, Christopher was not suspected of any crime, posed no danger to the deputies, and did not disobey or resist the deputies.  Yet the deputies tased him for no reason, rendering him unconscious and causing him to fall and sustain several injuries.  It was clearly established before December 2023 that an officer violates the Fourth Amendment by using a taser on a person who is suffering a medical emergency and is "not suspected of a crime" and "posed no danger, did not act belligerently or yell at the officers, and did not disobey or resist the officers."  *Helm*, 989 F.3d at 1275.  Thus, Christopher adequately alleged that the three deputies violated his clearly established Fourth Amendment rights when they tased him, so the deputies are not entitled to qualified immunity based on the present record.  The Court denies their motion to dismiss.[3]

CONCLUSION

As discussed above, the Court grants the motions to dismiss the claims against Tonia Johnstone, Michael McMunn, Southern Health Partners, Inc., Christie Webb, and James Cook (ECF Nos. 19

---

[3] If discovery does not reveal sufficient evidence to create a genuine factual dispute on these allegations, then the three deputies may be entitled to qualified immunity at the summary judgment stage.

10

& 27) and grants the motion to dismiss the claims against Mike Jolley (ECF No. 27).  The Court denies the motion to dismiss the claims against Zachary Sisk, Ryan Campbell, and Caden Senette (ECF No. 27).

IT IS SO ORDERED, this 27th day of July, 2026.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

11